# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUDOLPH A. KARLO and MARK K. MCLURE, | ) ) ) |
| Plaintiffs, | ) 2:10-cv-1283 ) |
| vs. | ) ) |
| PITTSBURGH GLASS WORKS, LLC, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION TO CERTIFY FINAL JUDGMENT UNDER RULE 54(b) AND STAY PROCEEDINGS filed by Plaintiffs Rudolph A. Karlo and Mark K. McLure (ECF No. 452) with a brief in support (ECF No. 453). Defendant Pittsburgh Glass Works, LLC ("PGW") filed a brief in opposition (ECF No. 454); Plaintiffs filed a replay brief (ECF No. 457). Accordingly, the motion is ripe for disposition.

### I. Background

The Court has previously detailed the extensive procedural history of this action in its Memorandum Opinion and Order dated March 31, 2014, in which it granted in part and denied in part PGW's motion for decertification, which dismissed the claims of Opt-in Plaintiffs Michael Breen, Matthew Clawson, Stephen Shaw, and John Titus. (ECF No. 343). The Court hereby incorporates that discussion by reference.

Since that time, the Court has issued a Memorandum Opinion and Order of Court in which it (1) granted PGW's (renewed) motions to bar (a) the proposed expert opinion of Dr. Anthony G. Greenwald related to implicit social bias; (b) the opinion of Dr. Michael Campion regarding the statistical analysis; and (c) Dr. Campion's opinion on reasonable human resource

practices; and (2) granted in part and denied in part PGW's motion to bar the rebuttal expert report of David Duffus. (ECF No. 442). Following that ruling, Plaintiffs filed a (renewed) motion to certify for interlocutory appeal the Court's Memorandum Opinion and Order which decertified Plaintiffs' conditionally-certified collective action as well as its Memorandum Opinion and Order which granted (in part) PGW's motions to bar the testimony of Plaintiffs' experts.

While that motion was pending, the Court issued a Memorandum Opinion and Order on September 2, 2015, which granted PGW's motions for summary judgment on the individual disparate treatment and disparate impact claims of the then-named Plaintiffs Rudolph A. Karlo, Mark K. McLure, William S. Cunningham, Jeffrey Marietti, and David Meixelsberger; and denied PGW's motion for summary judgment of the individual retaliation claims of Karlo and McLure. (ECF No. 448). In accordance with that Memorandum Opinion and Order, the Court entered judgment the following day in favor PGW and against Karlo, McLure, Cunningham, Marietti, and Meixelsberger on Count One (Disparate Treatment Under the Age Discrimination in Employment Act) and Count Two (Disparate Impact Under the Age Discrimination in Employment Act) of Plaintiffs' Second Amended Complaint. Thus, the only claims that remain are the individual retaliation claims of Karlo and McLure.

The parties thereafter jointly motioned the Court to withdraw Plaintiffs' motion to certify for interlocutory appeal and to permit Plaintiffs to refile same to reflect the rulings on PGW's motions for summary judgment. The Court granted the parties' motion on September 3, 2015, stating that "Plaintiffs may renew and refile their Motion to Certify for Interlocutory Appeal and Stay Proceedings on or before September 11, 2015, with said motion relating back to August 26, 2015 for the purpose of any jurisdictional or procedural deadline(s)." (ECF No. 451).

Plaintiffs timely filed the pending motion, in which they now ask the Court to certify its judgment in favor of PGW and against Plaintiffs as a final judgment under Federal Rule of Civil Procedure 54(b) and to issue an express determination that "there is not just reason for delay" of appellate review. Plaintiffs also request that the Court stay the proceedings pending resolution of their appeal, which PGW opposes. PGW does not, however, oppose the entry of final judgment.

Even so, this Court must independently assess whether it should enter a final judgment. As our court of appeals has observed, "Rule 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel." *Panichella v. Pa. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958). In other words, "district judges may not enter orders under Rule 54(b) just because the parties ask." *Stamatakis Indus., Inc. v. J. Walter Thompson, U.S.A., Inc.*, 944 F.2d 382, 383 (7th Cir. 1991). Instead, district judges "must independently inquire whether such orders are appropriate, and they owe an obligation to [the court of appeals] to ensure that the claims being carved off for separate judgment are legally and factually distinct from those reserved." (citation omitted). Accordingly, the Court must turn to the controlling standard for deciding a motion brought under Rule 54(b).

## II. Legal Standard

Federal courts of appeal only have jurisdiction over appeals from "final decisions" of federal district courts. 28 U.S.C. § 1291. "Ordinarily, an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291." *Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999). However, Rule 54(b) allows a district court to convert "an order adjudicating less than an entire action to the end that it becomes a 'final' decision over which a court of appeals may

exercise jurisdiction under 28 U.S.C. § 1291." *Elliott v. Archdiocese of New York*, 682 F.3d 213, 219 (3d Cir. 2012). Rule 54(b) expressly provides:

> **Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

This rule "'attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties.'" *Elliot*, 682 F.3d at 220.

Be that as it may, "certification of a judgment as final under Rule 54(b) is the exception, not the rule, to the usual course of proceedings in a district court." *Id.* "'Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a dispatcher.'" *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). As such, "[t]he power which this Rule confers upon the trial judge should be used only in the infrequent harsh case as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute [28 U.S.C. § 1291] and rule." *Panichella*, 252 F.2d at 455

"Rule 54(b) thus requires that a district court first determine whether there has been an ultimate disposition on a cognizable claim for relief as to a claim or party such that there is a 'final judgment.'" *Elliot*, 682 F.3d at 220 (citing *Curtiss-Wright Corp.*, 446 U.S. at 8). "If it determines that there has been such a disposition, 'the district court must go on to determine

4

whether there is any just reason for delay,' taking into account 'judicial administrative interests as well as the equities involved.'" *Id.* (quoting *Curtiss-Wright*, 446 U.S. at 7-8). "This latter requirement, that a district court 'must go on to determine whether there is any just reason for delay,' is not merely formalistic." *Id.* If the district court fails to make such a determination on the record, the order is not considered to be final and the court of appeals, in turn, lacks jurisdiction. *Id.* Moreover, when certifying an order pursuant to Rule 54(b), a mechanical recitation of the "no just reason for delay" language in the rule will not suffice. *Id.* The district court must therefore instead "'clearly articulate the reasons and factors underlying its decision . . . .'" *Id.* (quoting *Allis–Chalmers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975)). "Unlike the need for an express determination that there is 'no just reason for delay,'" however, the requirement that the district court provide a statement of reasons is not a jurisdictional prerequisite, so long as "'the propriety of the appeal may be discerned from the record.'" *Id.* (quoting *Carter*, 181 F.3d at 346).

**III. Discussion**

Plaintiffs' motion has requested that the Court certify its judgment in favor of PGW and against Plaintiffs Karlo, McLure, Cunningham, Marietti, and Meixelsberger as a final judgment pursuant to Rule 54(b) and to stay further proceedings in the district court pending the resolution of their appeal. The Court will address these two aspects of Plaintiffs' motion seriatim.

**A. Rule 54(b)**

The Court finds that the requirements of Federal Rule of Civil Procedure 54(b) have been met. As an initial matter, there is no question that the Court's Memorandum Opinion and Order of September 2, 2015 (ECF No. 448), constituted the "ultimate disposition" of the disparate

treatment and disparate impact claims of Plaintiffs Karlo, McLure, Cunningham, Marietti and Meixelsberger, which had been brought against PGW.

The question then becomes whether there is any "just reason" for delaying the entry of final judgment. In making this determination, the Court must consider several factors: "the relationship between the adjudicated and unadjudicated claims," "the possibility that the need for review might or might not be mooted by future developments in the district court," "the possibility that the reviewing court might be obliged to consider the same issue a second time," "the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final," and "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006) (quoting *Allis-Chalmers,* 521 F.2d at 364).

These factors weigh in favor of granting this aspect of Plaintiffs' pending motion. Notably, the issues presented through the disparate treatment and disparate impact claims of Plaintiffs are separable and distinct – factually and legally – from the individual retaliation claims of Karlo and McLure against PGW.[1] As a result, there is no risk of duplicative appeals or reason to delay appellate review of the other aspects of this five-year-old action. In addition, future developments in the district court are unlikely to moot the need for appellate review. Plaintiffs are either going to appeal now, if given the opportunity, or later, after a trial on the merits of the individual retaliation claims of Karlo and McLure. The counterclaims asserted by

---

1. For instance, the discrimination claims of Karlo and McLure (as well as Cunningham, Marietti and Meixelsberger) involved the events related to the March 31, 2009 reduction in force, during which time they were terminated from the Manufacturing Glass Technology Department in Harmarville, Pennsylvania by Gary Cannon and received severance paperwork from Diana Jarden of human resources. The retaliation claims of Karlo and McLure stem from positions that they, respectively, held at PGW's Creighton facility and its Glass Research Center in Harmarville. The manager of Karlo's assignment was Mark Soderberg, and the human resources personnel involved in the decision to end his position was John Felker. As to McLure, he was supervised by Peter Dishart, and the decision to end his position was made by Robert McCullough.

PGW against Plaintiffs also would not result in a set-off against the judgment sought to be made final – which is in favor of the defendant.

For the foregoing reasons, the Court finds that there is "no just reason for delay," and therefore, it will certify its judgment in favor of PGW and against Plaintiffs Karlo, McLure, Cunningham, Marietti, and Meixelsberger as a final judgment pursuant to Rule 54(b).[2]

**B. Stay**

On September 30, 2015, the United States Court of Appeals for the Third Circuit issued a precedential opinion that "focus[es] on how to balance the four factors that determine whether to grant a stay pending appeal." *In re Revel AC, Inc.*, -- F.3d --, No. 15-1253, 2015 WL 5711358, at *1 (3d Cir. Sept. 30, 2015). Those factors are: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at *7. "In order not to ignore the many gray shadings stay requests present, courts 'balance[e] them all' and 'consider the relative strength of the four factors.'" *Id.* (quoting *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011)).

---

2. The Court notes that the parties say very little regarding the immediate appeal(ability) of the Court's Memorandum Opinion and Order dated March 31, 2014 (ECF No. 343) which decertified the conditionally-certified collective action – which turned on whether those who have opted in were in fact "similarly situated" to the representative plaintiffs. For example, in their brief, Plaintiffs make reference to their now-withdrawn motion in which they renewed their motion to certify for interlocutory appeal the Court's Memorandum Opinion and Order that decertified their collective action. (ECF No. 453 at 2 n.1). They also mention that "six of the eight original [P]laintiffs who would have a stake in an appeal[footnote] (whether taken at this time or later in the future) have no retaliation claims and would thus be forced to idly wait for the retaliation claims to be tried before pursuing their appeals." *Id.* at 4. Moreover, Plaintiffs' footnote states: "[t]hese include the four opt-in Plaintiffs who were dismissed from the case when the collective action was decertified." *Id.* at n.2. To be sure, the Court finds that there is no just reason for delay with regard to that ruling as well – it disposes of the collective action component of this case and remains separate and distinct from the remaining individual retaliation claims of Karlo and McLure. Moreover, the same reasons that warrant the certification of a final judgment on the disparate impact and disparate treatment claims also fully justify an immediate appeal of the decertification ruling.

7

Even so, "'the most critical' factors, according to the Supreme Court are the first two.'" *Id.* at *7 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Although both are necessary, our court of appeals has suggested that "the former is arguably the more important piece of the stay analysis." *Id.* At the first step, "a sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'" *Id.* at *8 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). In other words, "while it 'is not enough that the chance of success on the merits be "better than negligible,"' *Nken*, 556 U.S. at 434, the likelihood of winning on appeal need not be 'more likely than not, *Singer Mgmt. Consultants*, 650 F.3d at 229.'" *Id.* "On the second factor, the applicant must 'demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay].'" *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis and alterations in original). "While a reference to 'likelihood' of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm [our court of appeals] understand[s] the Supreme Court's use of 'likely' to mean more apt to occur than not." *Id.*

If "'an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id.* (quoiting *Nken*, 556 U.S. at 435). At this point, a district court engages in the so-called "balancing of harms or balancing of equities" in which it must "weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three)." *Id.* In addition, the court must also "take into account where the public interest lies (factor four)—in effect, how a stay decision has 'consequences beyond the immediate parties.'" *Id.* (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 388 (7th Cir. 1984).

"In deciding how strong a case a stay movant must show," the court is to apply the "sliding-scale approach." *Id.* at *9 (citations omitted). "Under it, '[t]he necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Id.* (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)). Put differently, "'[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor.'" *Id.* (quoting *Roland Mach.*, 749 F.2d at 387).

Applying this framework, the Court must first ask "[d]id the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay?" *Id.* (emphasis in original). And here, the answer to both questions is no.

Plaintiffs make no attempt to evaluate their likelihood of success on the merits and even criticize PGW for doing so. *See* Pls.' Reply at 1 ("PGW opposes a stay pending appeal based upon the wrong legal standard . . . . [it] incorrectly attempts to have this Court evaluate Plaintiffs' likelihood of success on the merits of their appeal in determining whether a stay should issue."). Be that as it may, the Court doubts (with all due deference) that Plaintiffs could make this showing. Take, for example, Plaintiffs' purported experts. In deciding the motions to bar their testimony, the Court found that the opinions of Dr. Greenwald and Dr. Campion were not based on sufficient facts or data, were not the product of reliable methods *and* would not assist the factfinder in resolving an issue in this case – rulings which are all reviewed for an abuse of discretion.[3] Absent Dr. Campion, Plaintiffs concede that their discrimination claims are

---

3. Plaintiffs suggest that the Court's ruling will be subject to de novo review because "[t]he core issue relating to the exclusion of [Dr. Campion's] report is the pure legal question of whether a group of age discrimination plaintiffs can assert an over-fifty disparate impact claim." (ECF No. 457 at 2). They base this suggestion on a footnote in the Court's opinion, in which it states as follows: "Of course, the subgrouping analysis would only be helpful to the

not viable. (ECF No. 446 at 1). Yet even assuming that Dr. Campion (and his statistical report) had survived the *Daubert* challenge, the Court has also ruled that an over-fifty-years-old subgroup is not cognizable under the ADEA. So, too, has the Court ruled that not a single Plaintiff could establish a prima facie case for disparate treatment. Thus, Plaintiffs would also have to show that they are likely to succeed on the merits with regard to these rulings as well. Once again, they have not attempted to do so. For these reasons, the Court cannot conclude that Plaintiffs have shown (or could show) that they are likely to succeed on the merits.

Nor have Plaintiffs shown that they will suffer irreparable harm absent a stay. Plaintiffs instead suggest that their proposed stay "attempts to preserve fundamental fairness," "serve[s] the interest of judicial efficiency," prevents "the duplicative presentation of witnesses at trial," which, from their perspective, "will waste several days of the Court['s] and the parties' resources." (ECF No. 457 at 1-3). At most, these considerations relate to the time and expense that a second and successive trial would entail if the Court was reversed, which does not constitute irreparable harm. *See id.* at \*11 ("To establish irreparable harm, a stay movant 'must demonstrate an injury that is neither remote nor speculative, but actual and imminent.'") (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)); *see also S. Freedman & Co. Inc. v. Raab*, No. CIV. 06-3723 RBK, 2008 WL 4534069, at \*3 (D.N.J. Oct. 6, 2008) (noting that there is "no hardship where the moving party's basis for seeking the stay was to avoid being forced to defend itself twice") (citing *CTF Hotel Holdings, Inc. v. Marriot Int'l, Inc.*, 381 F.3d 131, 139 (3d Cir. 2004)).

---

factfinder if this Court held that Plaintiffs could maintain an over-fifty disparate impact claim. It has not done so." (ECF No. 442 at 25). While the Court did make that observation (and suggested that it would be an alternative basis to bar Dr. Campion's testimony), the crux of its opinion was that "his report is not based on sufficient data," that his "methodology is not reliable," and that five of his six analyses related to the RIF were "rooted in rank speculation," and therefore, his statistical report did not meet the requirements of Federal Rule of Evidence 702. *Id.* at 24-25.

"Keeping in mind that the first two factors are the most critical, if 'the chance of success on the merits [is only] better than negligible' and the 'possibility of irreparable injury' is low, a stay movant's request fails." *In re Revel AC, Inc.*, 2015 WL 5711358, at *10 (quoting *Nken*, 556 U.S. at 434) (alteration in original). And where, as here, "'the movant does not make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis.'" *Id.* at *10 (quoting *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300-01 (7th Cir. 1997)) (alterations in original). Accordingly, the stay will be denied.

## IV. Conclusion

For the reasons hereinabove stated, the Court will grant in part and deny in part Plaintiffs' motion to certify final judgment under Rule 54(b) and stay proceedings. The Court will certify its judgment in favor of PGW and against Plaintiffs on their discrimination claims, but it will not stay the proceedings pending the resolution of their appeal. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUDOLPH A. KARLO and MARK K. MCLURE, <br><br> Plaintiffs, <br><br> vs. <br><br> PITTSBURGH GLASS WORKS, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) 2:10-cv-1283 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER OF COURT

AND NOW, this 2nd day of October, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Plaintiffs' MOTION TO CERTIFY FINAL JUDGMENT UNDER RULE 54(b) AND STAY PROCEEDINGS (ECF No. 452) is **GRANTED** insofar as the Court will enter final judgment pursuant to Federal Rule of Civil Procedure 54(b) on Plaintiffs' discrimination claims and **DENIED** insofar as the Court will not stay the proceedings pending the resolution of the appeal.

**IT IS FURTHER ORDERED** that a telephonic status conference with counsel will be conducted by the Court regarding the future direction of this litigation on Tuesday, October 6, 2015 at 3:00 p.m. Counsel are responsible for coordinating the call to Chambers on one telephone line at that time.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: All Counsel of Record
(via CM/ECF)