IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUDOLPH A. KARLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:10-cv-1283 |
| v. | ) |
| | ) |
| PITTSBURGH GLASS WORKS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| MARK K. MCLURE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PITTSBURGH GLASS WORKS, LLC, | ) |
| | ) |
| Defendant. | ) |

## OMNIBUS MEMORANDUM ORDER

In anticipation of the successively-scheduled jury trials in the above-captioned matters, Plaintiffs Rudolph A. Karlo and Mark K. McLure and Defendant Pittsburgh Glass Works, LLC ("PGW") have filed motions in limine.[1] Pending before the Court are the following: DEFENDANT'S MOTION[S] IN LIMINE TO BAR EVIDENCE REGARDING THE EXISTENCE OF INSURANCE (ECF Nos. 480, 487); DEFENDANT'S MOTION[S] IN LIMINE TO BAR EVIDENCE OF DEFENDANT'S PRESENT FINANCIAL STATUS (ECF Nos. 481, 488); DEFENDANT'S MOTION[S] IN LIMINE TO BAR EVIDENCE REGARDING ADMINISTRATIVE PROCEEDINGS AND DISMISSED CLAIMS AND

---

1. PGW filed nearly identical motions as to Plaintiffs Rudolph Karlo and Mark McLure, which the Court has grouped together.

MOTION FOR LIMITING INSTRUCTION (ECF Nos. 482, 489); DEFENDANT'S MOTION[S] IN LIMINE TO BAR EVIDENCE REGARDING EVENTS PRIOR TO MARCH 31, 2009 REDUCTION IN FORCE AND EVENTS SUBSEQUENT TO END OF PLAINTIFF'S CONTRACT POSITION (ECF Nos. 483, 490); DEFENDANT'S MOTION[S] IN LIMINE TO BAR EVIDENCE REGARDING OTHER CHARGES, LAWSUITS OR CLAIMS OF DISCRIMINATION AND RETALIATION (ECF Nos. 484, 491); DEFENDANT'S MOTION[S] IN LIMINE TO BAR QUESTIONING OR EVIDENCE REGARDING WHETHER ANY PGW EMPLOYEE WAS AWARE OF A "LAWSUIT" INVOLVING PLAINTIFF (ECF Nos. 485, 492); PLAINTIFFS' MOTION IN LIMINE REGARDING CONTRACT EMPLOYMENT STATUS (ECF No. 495); PLAINTIFFS' MOTION IN LIMINE REGARDING PURPORTED SETTLEMENT NEGOTIATIONS (ECF No. 497); and PLAINTIFFS' MOTION IN LIMINE REGARDING DISCRIMINATION CLAIMS (ECF No. 499); and PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE PURPORTED EXPERT TESTIMONY BY JEFFREY P. BELACK (ECF No. 515). The issues have been fully briefed (ECF Nos. 496, 498, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 513, 516), and are ripe for disposition.

I. **Background**

The parties, counsel, and the Court are familiar with the background of this case and, therefore, the Court will not recite the facts at length. The following is a brief recitation of the procedural history relevant to the issues presently before the Court.

On September 2, 2015, the Court issued a Memorandum Opinion and Order, which granted PGW's motions for summary judgment on the individual disparate treatment and disparate impact claims of the then-named Plaintiffs Rudolph A. Karlo, Mark K. McLure,

William S. Cunningham, Jeffrey Marietti, and David Meixelsberger; and denied PGW's motion for summary judgment of the individual retaliation claims of Karlo and McLure. (ECF No. 448). In accordance with that Memorandum Opinion and Order, the Court entered judgment the following day in favor PGW and against Karlo, McLure, Cunningham, Marietti, and Meixelsberger on Count One (Disparate Treatment Under the Age Discrimination in Employment Act ("ADEA")) and Count Two (Disparate Impact Under the ADEA) of Plaintiffs' Second Amended Complaint.

On October 2, 2015, the Court certified its judgment in favor of PGW and against Plaintiffs Karlo, McLure, Cunningham, Marietti, and Meixelsberger as a final judgment pursuant to Federal Rule of Civil Procedure 54(b). That aspect of the case is currently pending before the United States Court of Appeals for the Third Circuit.

Accordingly, the only claims that remain before this Court are the individual retaliation claims of Karlo and McLure, which have been severed for separate trials. Jury selection for Karlo and McLure is scheduled, respectively, on January 19, 2016 and February 1, 2016.

It is the practice of this member of the Court to resolve evidentiary issues in advance so that the presentation to the jury can proceed in a focused, efficient and effective manner. Thus, this Memorandum Order will endeavor to draw clear lines as to the evidence that may be presented at the respective trials. Counsel will be expected to adhere strictly to such rulings and to prepare their witnesses to do the same.

**II.    Legal Standard**

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The definition must be

liberally construed in favor of admissibility. *See Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004) (explaining that Rule 401 is "very broad" and "does not raise a high standard"). At the same time, however, a district court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

III. Discussion

    A. **DEFENDANT'S MOTIONS IN LIMINE TO BAR EVIDENCE REGARDING THE EXISTENCE OF INSURANCE (ECF Nos. 480, 487)**

PGW moves the Court to enter an order that bars evidence regarding the existence of insurance that may potentially cover Plaintiffs' claims. For their part, Plaintiffs seek to inform the jury that any damages which may be awarded will likely be paid by PGW's insurance carrier to rebut how Plaintiffs anticipate PGW will portray its financial status – an underdog company that made a come-back in adverse economic conditions which should not be saddled with a large award.

The Court finds that any evidence, testimony or argument regarding the existence of PGW's purported liability insurance is entirely irrelevant to the remaining retaliation claims. It has no logical relationship to the question of liability – whether PGW retaliated against Plaintiff(s) for having reported allegations of age discrimination – and, in fact, relates exclusively to PGW's ability to pay damages. Accordingly, PGW's motions in limine to bar evidence regarding the existence of insurance (ECF Nos. 480, 487) are **GRANTED**.

## B. DEFENDANT'S MOTIONS IN LIMINE TO BAR EVIDENCE OF DEFENDANT'S PRESENT FINANCIAL STATUS (ECF Nos. 481, 488)

PGW moves the Court to enter an order that bars evidence regarding its present financial status, arguing that this evidence is prejudicial and may distract the jury from the real issue(s) in the case. In response, Plaintiffs contend that this evidence is relevant to their claim for punitive damages.

Although the United States Court of Appeals for the Third Circuit has not addressed this specific issue, all of the courts of appeals which have done so have denied claims for punitive damages in ADEA cases. *See Bruno v. Western Elec. Co.*, 829 F.2d 957, 966-67 (10th Cir. 1987) (collecting cases from other circuits). Several members of this Court and a number of our sister courts within the Third Circuit have denied claims for punitive damages under the ADEA as well. *See, e.g.*, *Zurik v. Woodruff Family Services*, 2009 WL 4348826, at *1 (W.D. Pa. Dec. 1, 2009); *Baldwin v. Peake*, 2009 WL 1911040, at *3 (W.D. Pa. July 1, 2009); *Steward v. Sears Roebuck & Co.*, 312 F. Supp. 2d 719, 730 (E.D. Pa. 2004).

In an ADEA *retaliation* case, however, courts are split on this issue. *See Tomao v. Abbott Labs., Inc.,* No. 04 C 3470, 2007 WL 2225905, at *19 (N.D. Ill. July 31, 2007) (collecting cases); *Smith v. Illinois Ass'n of Sch. Boards*, No. 3-10-CV-00242-DRH, 2010 WL 4293088, at *3 (S.D. Ill. Oct. 22, 2010) (disallowing punitive damages in an ADEA retaliation claim as "contrary to the language and purpose of the statute"); *Lyons v. Hader-Seitz, Inc.*, No. 03-C-645, 2005 WL 2077358, at *1 (E.D. Wis. Aug. 19, 2005) (observing that "[c]ompensatory and punitive damages are not available under the ADEA, except for retaliation claims") (citing *Pfeifer v. Essex Wire Corp.*, 682 F.2d 684, 687-88 (7th Cir. 1982); *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 283-84 (7th Cir. 1993)). This apparent split of authority stems from the Seventh Circuit's decision in *Travis v. Gary Comm. Mental Health Center*, 921 F.2d 108 (7th

Cir. 1990).[2] *See Goico v. Boeing Co.*, 347 F. Supp. 2d 986, 995 (D. Kan. 2004). There, "[a]gainst th[e] backdrop of nearly uniform authorities holding that the right to 'legal' relief in the ADEA does not authorize recovery of damages for pain and suffering or punitive damages, the Seventh Circuit appears to have created a special exception applicable only to retaliation claims." *Id.* Several courts have called the Seventh Circuit's decision into question. *See Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933 (11th Cir. 2000); *Lenius v. Deere & Co.*, 924 F. Supp. 2d 1005, 1011 (N.D. Iowa 2013); *Goico*, 347 F. Supp. 2d at 995; *Lanza v. Sugarland Run Homeowners Ass'n, Inc.*, 97 F. Supp. 2d 737, 741 (E.D. Va. 2000); *but see Tomao*, 2007 WL 2225905, at *20. This Court finds those cases persuasive and agrees that the ADEA does not countenance claims for punitive damages in retaliation claims.

As such, any discussion of or evidence relating to PGW's present financial status / net worth is irrelevant, and therefore, inadmissible into evidence at trial. Without the availability of punitive damages, Plaintiffs cannot establish any particular fact(s) related to their respective claims of retaliation based on evidence of the financial status of PGW. The only purpose of presenting such evidence to the jury would be to represent that PGW could afford to pay an award to Plaintiffs, which is virtually no different than allowing Plaintiffs to introduce evidence of Defendant's liability insurance. Accordingly, PGW's motions in limine to bar evidence regarding its present financial status (ECF Nos. 481, 488) are **GRANTED**.

---

2. In *Travis v. Gary Comm. Mental Health Center*, 921 F.2d 108 (7th Cir. 1990), the Seventh Circuit Court of Appeals "found that a 1977 amendment to the FLSA, which added language essentially identical to the 'appropriate legal relief' provision of the ADEA, changed the FLSA to now permit a plaintiff to recover punitive damages and compensation for emotional distress on a retaliation claim." *Goico v. Boeing Co.*, 347 F. Supp. 2d 986, 995 (D. Kan. 2004).

## C. DEFENDANT'S MOTIONS IN LIMINE TO BAR EVIDENCE REGARDING ADMINISTRATIVE PROCEEDINGS AND DISMISSED CLAIMS AND MOTION FOR LIMITING INSTRUCTION (ECF Nos. 482, 489)

PGW moves the Court to enter an order limiting evidence regarding (1) Plaintiffs' Equal Employment Opportunity Commission ("EEOC") charge of discrimination; (2) the EEOC's investigation, findings, and issuance of the "Right-to-Sue" letter; and (3) reference to Plaintiffs' (or any former plaintiffs') now-dismissed age discrimination claims. PGW further requests that the Court give a limiting instruction with respect to Plaintiffs' prior age discrimination complaint as well as the EEOC Charge(s) and proceedings.

Plaintiffs oppose these motions in their entirety. In support, Plaintiffs insist that the evidence PGW seeks to exclude is highly relevant and probative of both Plaintiffs' good faith belief that they were being discriminated against and of PGW's retaliatory motive.

It is within the Court's discretion to exclude evidence related to EEOC / administrative investigations and findings. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3d Cir. 2002). Moreover, as this Court has previously recognized, the United States Court of Appeals for the Third Circuit has stated that "[t]he weight of the case law holds that Rule 403 may operate on an EEOC report, and that the decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court and to be determined on a case by case basis." *Berry v. Georgetown Inn, Ltd.*, No. 2:08-CV-0205, 2010 WL 608076, at *1 (W.D. Pa. Feb. 18, 2010) (quoting *Coleman*, 306 F.3d at 1345); *see also Kirby v. J.C. Penney Corp.*, No. 208-CV-1088, 2009 WL 3572494, at *2 (W.D. Pa. Oct. 26, 2009) ("The Court fails to see how what is essentially a non-decision on the part of the EEOC demonstrates any tendency to make the existence of a fact of consequence to the determination of this action more or less probable than it would be without the evidence.").

The fact that Plaintiffs each submitted a charge of discrimination as well as the timing related to same – *i.e.*, the date of filing and of the issuance of the "Rights-to-Sue" letter – is relevant to their retaliation claim and PGW's defense. At the same time, however, the contents of the EEOC's Right-to-Sue Letter, and any evidence relating to the EEOC's investigation and proceedings as well as the now-dismissed age discrimination claims is irrelevant and otherwise unduly prejudicial. *See id.* To be sure, that aspect of Plaintiffs' claim is **not** the subject of this/these trials. The contents of Plaintiffs' EEOC Charge is also likely to mislead the jury, cause undue delay, and waste time, particularly when the fact that Plaintiffs engaged in protected activity should not be in dispute.[3] At trial, the Court will thus only permit the parties to introduce redacted copies of the EEOC Charge and the EEOC's "Rights-to-Sue" letter, which

---

3. Based on the parties proposed jury instructions, this element appears to somehow now be in dispute. Remarkably, PGW is willing to stipulate to the fact that Plaintiff(s) engaged in protected activity when he filed his EEOC Charge, while Plaintiffs are apparently unwilling to do so. For their part, Plaintiffs contend that the protected activity consisted of their filing of the EEOC Charge *and* their alleged failure to withdraw it when demanded by PGW. At any rate, the Model Civil Jury Instructions for the District Courts of the Third Circuit contemplate when this element is not in dispute. Model Civil Jury Instruction 8.1.5. – Elements of an ADEA Claim—Retaliation – provides as follows:

> To prevail on this claim, [plaintiff] must prove all of the following by a preponderance of the evidence:
>
> First: [Plaintiff] [describe activity protected by the ADEA] . . . .
>
> Concerning the first element, [plaintiff] need not prove the merits of [his/her] [describe plaintiff's activity], but only that [he/she] was acting under a reasonable, good faith belief that plaintiff's] [or someone else's] rights under the Age Discrimination in Employment Act were violated.

The commentary further provides that "[i]n accord with instructions from other circuits, Instruction 8.1.5 directs the jury to determine both the good faith and the reasonableness of the plaintiff's belief that employment discrimination had occurred." However, "[i]n cases where the protected nature of the plaintiff's activity is not in dispute, this portion of the instruction can be modified and the court can simply instruct the jury that specified actions by the plaintiff constituted protected activity." The Court intends to follow that approach. It bears noting that referring to Plaintiffs' alleged failure to withdraw their EEOC Charges when demanded to do so by PGW as protected activity would require the Court, in essence, to endorse their view of the facts in its instructions to the jury. Perhaps Plaintiffs recognize this point because, in their proposed instructions, they make this allegation when discussing the third element of an ADEA claim. *See* ECF No. 534 at 11 ("Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may find that there is a sufficient connection through timing, that is, PGW's action followed shortly after Mr. Karlo refused to withdraw his claims of discrimination."). Be that as it may, this issue could perhaps be cured by instructing the jury, for instance, that Plaintiff(s) engaged in protected activity when he filed *and maintained* his charge of age discrimination with the EEOC – both of which are undisputed facts. An instruction of this sort would still allow Plaintiffs to argue their theory of the case, without the Court resolving or weighing into this disputed issue.

must only show the information that is relevant to the remaining claim(s) – *i.e.*, the fact that a charge was filed; identification of "age discrimination" as the nature of the charge; and the date of the charge / issuance of the "Rights-to-Sue" letter. Accordingly, PGW's motions in limine to bar evidence regarding administrative proceedings and dismissed claim (ECF No. 482, 489) are **GRANTED**.

As for the other relief requested, the Court will likely give the jury (a modified version of) the limiting instruction requested by PGW.[4] In the Court's view, the precise nature of the limiting instruction is more appropriately addressed at a charge conference, which will occur at the conclusion of the trial(s) after the jury has heard all of the testimony and evidence. Accordingly, a ruling on PGW's motions for a limiting instruction (ECF No. 482, 489) is **DEFERRED.**

> **D. DEFENDANT'S MOTIONS IN LIMINE TO BAR EVIDENCE REGARDING EVENTS PRIOR TO MARCH 31, 2009 REDUCTION IN FORCE AND EVENTS SUBSEQUENT TO END OF PLAINTIFF'S CONTRACT POSITION (ECF Nos. 483, 490)**

PGW moves the Court to enter an order that bars the presentation of evidence regarding (1) PPG Industries' past practices, reductions in force, or "RIF guidelines;" (2) PGW's December 2008 reduction in force; (3) any reduction in force at PGW subsequent to the March 31, 2009 reduction in force; and (4) reference to either KKR or Kohlberg.[5]

In response, Plaintiffs posit that they are entitled to present evidence of other discriminatory and retaliatory acts by PGW and its parent to prove their retaliation claim as well

---

4. In its response to Plaintiffs' motion in limine regarding discrimination claims, PGW represents that, "in the interest of an orderly trial, PGW would agree to add to the end of its proposed limiting instruction a statement that Plaintiff[s] ha[ve] appealed the entry of judgment on [their] discrimination claim[s]."

5. PGW was formed on October 1, 2008 from PPG Industries, Inc.'s ("PPG") auto-glass assets. PPG initially retained a forty-percent ownership in PGW; Kohlberg & Company ("Kohlberg"), a private equity firm, owned the remaining sixty-percent and later acquired the remainder of PPG's interest in the venture. James Wiggins, a Kohlberg principal, was named Chairman and CEO of PGW.

9

as a wilful violation of the ADEA. In doing so, Plaintiffs suggest, as if it is a well-established fact, that the reductions in force conducted by PGW were discriminatory and that Kohlberg has discriminated against older workers in the recent past. Plaintiffs also argue that PGW has failed to carry its burden to show that this evidence is not prejudicial or might be misleading or confusing to the jury. The Court cannot agree.

Permitting the introduction of all of this evidence would risk turning the trial into a series of "mini-trials" on the propriety of PGW's reductions in force and the corresponding terminations as well as the now-dismissed claims of Karlo, McLure, and the other plaintiffs against whom judgment has been entered. That would amount to a substantial waste of the jury's time and tend to obscure rather than shed light on the key issue of whether Plaintiffs were retaliated against based on filing and maintaining a charge of age discrimination with the EEOC. It would also prejudice PGW – in essence, Plaintiffs want to argue that the purported historical discriminatory practices of non-parties PPG and Kohlberg, which they take for granted as fact, somehow trickled down to PGW creating an ageist corporate culture, which manifested itself in reductions in force and ultimately led to Plaintiffs' subsequent termination(s). To be sure, PPG's RIF guidelines and so-called legacy of discrimination, PGW's reductions in force and alleged non-compliance with the human resources practices of its predecessor, and Kohlberg/KKR's limited involvement and purported profit motives have no bearing on the remaining issues in this case, including whether this defendant acted with retaliatory animus against Plaintiff(s).[6] The

---

6. Our court of appeals has observed that "a plaintiff may offer circumstantial proof of intentional discrimination on the basis of age in the form of a supervisor's statement relating to formal or informal managerial attitudes held by corporate executives," noting "that it is often crucial to the jury's assessment of whether the employer's reasons were pretextual and the ultimate question whether the employer intentionally discriminated against an employee." *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 132 (3d Cir. 1997) (citations omitted). Unlike in that instance, however, Plaintiffs have not identified any biased comments made by any PPG or Kohlberg personnel that reflects the managerial viewpoint at PGW, let alone any ageist remark of any PGW decision-maker that relates to the alleged adverse employment action(s). Instead, Plaintiffs simply assert that "[they] are entitled to present evidence of other discriminatory and retaliatory acts by PGW and its corporate parent" and proceed to criticize PGW for seeking to

Court has repeatedly made this point – perhaps not clear enough – yet Plaintiffs continue to attempt to make these extraneous matters central to this litigation.[7] Be that as it may, the Court will not permit the jury to hear this evidence or allow Plaintiffs to proceed as if the underlying discrimination claims are still a part of this case. Accordingly, PGW's motions in limine to bar evidence regarding events prior to the March 31, 2009 reduction in force and events subsequent to the end of Plaintiff's contract position (ECF No. 483, 490) are **GRANTED**.

### E. DEFENDANT'S MOTIONS IN LIMINE TO BAR EVIDENCE REGARDING OTHER CHARGES, LAWSUITS OR CLAIMS OF DISCRIMINATION AND RETALIATION (ECF Nos. 484, 491)

PGW moves the Court to enter an order that bars evidence regarding (1) any alleged complaints or perceptions of discrimination or retaliation by any PGW employee or temporary contract worker other than Plaintiffs; (2) any reference by either Plaintiff to the pending retaliation lawsuit of the other; (3) any reference to an alleged "ageist culture" at PPG or PGW; and (4) any reference to other charges, investigations, or lawsuits against PGW or PPG.[8]

---

exclude "sweeping categories of evidence," including evidence of PPG's "legacy of discrimination," "[e]vidence that [RIFs] conducted by PGW that occurred in close proximity to the events giving rise to this case were discriminatory," and evidence that Kolhberg has discriminated against older workers in the past."

7. *See Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2015 WL 4232600, at *17 (W.D. Pa. July 13, 2015) ("To the extent that Mr. Duffus opines on matters that this Court has already ruled to be irrelevant [*i.e.*, Kohlberg and KKR] PGW may submit a motion in limine to limit his testimony at the appropriate time."); *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2014 WL 1317595, at *21 (W.D. Pa. Mar. 31, 2014) ("Plaintiffs may not, however, include irrelevant averments regarding KKR or Kohlberg [in their amended pleading]."); *see also Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2015 WL 5782062, at *4 (W.D. Pa. Oct. 2, 2015) ("Notably, the issues presented through the disparate treatment and disparate impact claims of Plaintiffs are separable and distinct—factually and legally—from the individual retaliation claims of Karlo and McLure against PGW."); *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2015 WL 5156913, at *13 n.17 (W.D. Pa. Sept. 2, 2015) ("Plaintiffs . . . continue to insist that PGW ignored long-standing RIF procedures, even though that company-wide system only existed at its predecessor, nonparty PPG."); *Karlo v. Pittsburgh Glass Works, LLC*, No. CIV.A. 10-1283, 2012 WL 1660674, at *1 (W.D. Pa. May 11, 2012) (Fischer, J.) ("Thus, to the extent that Plaintiffs seek to support or demonstrate liability in 2009 based on the state of affairs in 2011, the Court is not persuaded that the specifics of the 2011 RIF are relevant to the pending case.").

8. These motions in limine are somewhat duplicative of PGW's motions in limine to bar evidence regarding events prior to March 31, 2009 reduction in force and events subsequent to end of Plaintiff's contract position (ECF No. 483, 490). To the extent that the issues overlap, the Court incorporates the foregoing discussion and ruling by reference.

Plaintiffs oppose the requested relief, primarily for the same reasons offered above. Furthermore, Plaintiffs "believe that the main strategic thrust of the instant motions" is to prevent each jury from hearing that nearly identical retaliatory statements were made to Karlo and McLure and that both were given the same message—"that their charges should 'go away' if they wanted to retain their jobs." And to the Plaintiffs, the evidence that PGW seeks to preclude is relevant, because it is probative of their good faith belief that they were victims of illegal age discrimination.

"[S]o-called 'me too' evidence in an employment discrimination case is neither *per se* admissible nor *per se* inadmissible." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008)).[9] "Rather, the question of whether evidence of discrimination against other employees by other supervisors is relevant is fact based and depends on several factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.*

At the outset, this Court has previously held that Plaintiffs' respective claims are factually distinct. *See Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2015 WL 6134052, at *2 (W.D. Pa. Oct. 16, 2015). There, this Court stated:

> As the parties, counsel, and the Court are well-aware, the remaining claims stem from positions that Karlo and McLure were engaged/employed at, respectively, PGW's Creighton Manufacturing Plant and its Glass Research Center in Harmarville, after they had each rejoined PGW under separate and unique circumstances. At these two locations, Karlo and McLure worked in separate business units, interacted with different individuals, decision-makers and human resources personnel, and were terminated months apart—all of which the Court has previously detailed at some length [in its Memorandum Opinion ruling on the motions for summary judgment].

---

9. In *Mandel v. M & Q Packaging Corp.*, the Court of Appeals found "that the District Court properly excluded the so-called 'me too' evidence, which consisted of the deposition testimony of two former employees of M & Q Plastic Products, Inc., because the two employees were not employed by defendant M & Q Packaging but by defendant's parent corporation." 706 F.3d 157, 168 (3d Cir. 2013).

*Id.* (internal citation omitted). More importantly, the Court explained that "[p]resenting these individual claims to a single jury in a one trial is also likely to confuse the factfinders . . . . In addition, there is some danger that "one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims." The same analysis applies with equal force here. At trial, the Court will not permit either Plaintiff to discuss or introduce evidence related to the retaliation claim of the other.

As for the other anticipated evidence, the Court likewise finds that it is not relevant to the issue that remains for a jury to decide: whether each Plaintiff was retaliated against because he complained about age discrimination. *See Philips v. Donahoe*, No. CIV.A. 12-410, 2014 WL 2527182, at *2 (W.D. Pa. May 30, 2014) ("The only issue remaining in this case is whether the Government retaliated against Plaintiff for engaging in protected activity, *e.g.*, filing an Equal Employment Opportunity Complaint. It is not necessary for Plaintiff to prove sexual harassment or a hostile work environment to prevail on her claim for retaliation, and the nature and circumstances of her underlying sexual harassment claim are irrelevant to proving said claim."). Allowing the introduction of testimony and evidence related to, for example, whether others perceived age discrimination or retaliation, whether Plaintiff(s) believed that PGW (and formerly PPG) targeted "older" workers in its reductions in force, and whether other former employees have filed charges of discrimination against PGW or its predecessor with the EEOC and in the courts would once again turn the trials into a series of "mini-trials" regarding same, amounting to a substantial waste of the jury's time and confusion of the issues. This sort of evidence is frequently excluded from trial, and the Court will exercise its discretion to do so here. *See Kant v. Seton Hall Univ.*, 279 F. App'x 152, 160 (3d Cir. 2008). Accordingly, PGW's motions in

limine to bar evidence regarding other charges, lawsuits or claims of discrimination and retaliation (ECF Nos. 484, 491) are **GRANTED**.

### F. DEFENDANT'S MOTIONS IN LIMINE TO BAR QUESTIONING OR EVIDENCE REGARDING WHETHER ANY PGW EMPLOYEE WAS AWARE OF A "LAWSUIT" INVOLVING PLAINTIFF (ECF Nos. 485, 492)

PGW moves the Court to enter an order that bars Plaintiffs' counsel from questioning or presenting evidence that any PGW employee knew of Plaintiffs' "lawsuit" before making any decisions regarding their temporary contract work assignment. In support, PGW highlights the dates of the relevant events: Karlo's work through Belcan ended on July 9, 2010, McLure's work through Carol Harris and then Belcan ended on September 19, 2010, and they filed their Complaint in this Court on September 30, 2010. PGW also points to the deposition of Mark Soderberg, the plant manager where Karlo worked, during which counsel allegedly tried to mislead and confuse the witness by asking if Soderberg was aware of the Complaint even though it was not yet filed.

Plaintiffs oppose these motions on several grounds. For instance, Plaintiffs submit that "non-lawyers working in a manufacturing plant are not likely to have a good understanding of the distinction between an EEOC Charge and a "lawsuit." Plaintiffs also suggest that the parties as well as the Court should deal with this issue via trial objections rather than a "sweeping motion in limine that could have the effect of needlessly excluding enormously important relevant testimony."

At the outset, the Court will not exclude Plaintiffs' anticipated line of questioning regarding precisely who knew what when or Soderberg's deposition testimony that it was "troubling" to him that Karlo was working at the plant while simultaneously pursuing a claim of

age discrimination. As this Court explained in its ruling on PGW's motions for summary judgment:

> [T]he timing of the decision to terminate Plaintiffs (and/or to not rehire them into non-contract positions), and precisely who knew what when—which would seem to be a material fact in this case—remains entirely unclear (perhaps because both sides somewhat distort the record). Moreover, it is incorrect, not to mention self-serving, for PGW to rely on the deposition testimony of the relevant decision-makers to the exclusion of contrary evidence in positing that they knew nothing of this litigation before the glassBYTEs.com article—even when McCullough himself had been involved in preparing the response to the EEOC charge. The trier of fact (*i.e.*, not PGW) must determine whether the testimony of Karlo and McLure is credible in light of the relevant decision-makers. In addition, it also remains unclear as to whether there was ever any discussion of the EEOC charge in either plant, what constituted the so-called "issue"/"the situation," and how the decisions to end the placements were made. Contrary to PGW's suggestion, these disputed facts cannot be dismissed as watercooler gossip; they are instead questions for a jury.

*Karlo*, 2015 WL 5156913, at *18. In pursuing this line of questioning, Plaintiffs will be expected not to mislead any witness regarding the distinction between an EEOC Charge and a federal court Complaint as well as the timing related to same vis-à-vis the alleged adverse employment action(s). In fact, the Court currently has under consideration instructing the jury on this distinction in its preliminary charge, which it will nevertheless give at some point during the trial(s) as requested by PGW.[10] Accordingly, PGW's motions in limine to bar questioning or evidence regarding whether any PGW employee was aware of a "lawsuit" involving plaintiff (ECF Nos. 485, 492) are **GRANTED IN PART AND DENIED IN PART**.

### G. PLAINTIFFS' MOTION IN LIMINE REGARDING CONTRACT EMPLOYMENT STATUS (ECF No. 495)

Plaintiffs move the Court to limit the presentation of evidence and argument regarding their status as PGW contract employees. In their view, the Court's previous ruling that deemed

---

10. PGW's proposed limiting instruction provides as follows: "Plaintiff's lawsuit was not filed until September 30, 2010, after Plaintiff's temporary work assignment ended. Plaintiff had filed an EEOC Charge on January 22, 2010. After reviewing Plaintiff's charge, the EEOC made no finding and informed Plaintiff of his right to sue. That notice was issued by the EEOC on July 1, 2010."

Karlo and McLure both "employees" of PGW constitutes the "law of the case." *See Karlo*, 2015 WL 5156913, at *17 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992)).

In response, PGW essentially asks the Court to reconsider its ruling on PGW's motion for summary judgment on Plaintiffs' retaliation claim. Alternatively, PGW suggests that the Court's legal determination that Plaintiffs were "employees" of PGW has no bearing on the fact that they were contracted by Belcan, and therefore, it should be allowed to argue that Plaintiffs understood that their employment arrangements with PGW were temporary.[11]

The question of "[w]hether a plaintiff is an 'employee' for purposes of [the] ADEA is a question of law to be determined by the court in the absence of disputed material underlying facts."[12] *Cox v. Master Lock Co.*, 815 F. Supp. 844, 845 (E.D. Pa.), *aff'd,* 14 F.3d 46 (3d Cir. 1993).

The Court has already decided this issue in favor of Plaintiffs at the summary judgment stage when confronted with an undisputed record. There, the Court explained that "[a]lthough

---

11. In a footnote, PGW also asserts that, if the Court were to grant Plaintiffs' motion in limine, it must also bar any evidence relating to Plaintiffs seeking full-time employment. This position has hardly been developed by PGW, and therefore, the Court will not address it in any detail. At any rate, it suffices to say that the Court disagrees. *See generally Faush v. Tuesday Morning, Inc.*, -- F.3d --, No. 14-1452, 2015 WL 7273268, at *5 (3d Cir. Nov. 18, 2015) ("Significantly, the inquiry under *Darden* is not *which* of two entities should be considered the employer of the person in question. Two entities may be 'co-employers' or 'joint employers' of one employee for purposes of Title VII.") (emphasis in original).

12. Recently, the Court of Appeals for the Third Circuit issued a precedential opinion in which it discussed the appropriate test for an employment relationship, concluding "that the *Darden* test applies to Title VII cases, while the *Enterprise* test does not." *Faush*, , 2015 WL 7273268, at *4. There, the Court of Appeals ultimately held that, on the facts presented, "a reasonable jury could find that Tuesday Morning was Faush's joint employer and that summary judgment was therefore improper." *Id.* at *9. In doing so, the Court observed that "[t]he decisions of [its] sister circuits concerning the status of temporary employees confirm this conclusion." *Id.* (citing *Butler v. Drive Automotive Industries of America, Inc.*, 793 F.3d 404 (4th Cir. 2015); *Maynard v. Kenova Chem. Co.*, 626 F.2d 359 (4th Cir. 1980)). Notably, in both Fourth Circuit cases, the court of appeals "found that an employment relationship existed as a matter of law on summary judgment." *Id.* But the *Faush* Court held "only that summary judgment should not have been granted." *Id.* It thus appears that, when the facts are not in dispute, a district court may decide this issue as a matter of law. *See Ernster v. Luxco, Inc.*, 596 F.3d 1000, 1006 (8th Cir. 2010) ("Because the ultimate issue is one of law, the employee issue under *Darden* may often be decided by the court on a summary judgment record. But when the issue turns on disputed facts that preclude summary judgment, as in *Jenkins* and this case, we are inclined to think that a bifurcated jury trial is one procedural option the district court has discretion to adopt."); *see also Landry v. Georgia Gulf Corp.*, 91 F. App'x 950, 951 (5th Cir. 2004) ("The ultimate question of whether an individual qualifies as a common law employee is a question of law.") (citation omitted).

16

the record is somewhat sparse regarding some of the *Darden* factors, the only consideration that supports PGW's position relates to the compensation of Karlo and McLure (which they apparently negotiated in advance with PGW), the benefits they received, and (perhaps) their tax treatment, as reflected in the employment paperwork." *Karlo*, 2015 WL 5156913, at *17. The Court continued:

> All other applicable considerations weigh in [Plaintiffs'] favor. PGW (through its employees) sought out both Karlo and McLure and arranged for their hiring through Belcan, which merely served as a conduit for their return to PGW. PGW also controlled their day-to-day employment activities: it assigned them to projects; supervised and reviewed their work, and set their schedule. In addition, Karlo and McLure also worked exclusively in PGW's facilities where they used its equipment, instruments, and tools, engaged in PGW's regular (and continued) course of business of manufacturing and testing automotive glass products on a (nearly) daily basis. Belcan had no involvement in these day-to-day activities. It was also PGW (and not Belcan) that decided to end the placement of both Karlo and McLure at its facilities.

*Id.* In closing, the Court concluded, as a matter of law, that "Karlo and McLure were thus both 'employees' of PGW." *Id.*

As such, "'[t]he law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation.'" *In re W.R. Grace & Co.*, 591 F.3d 164, 174 (3d Cir. 2009) (quoting *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)). "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (citations omitted). And it has developed "'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 856 (3d Cir. 1994)).

17

The Court sees no reason to reconsider its ruling, and PGW has not offered any legitimate reason for it to do so. PGW will not be permitted to reopen the question of whether Karlo and McLure were employees of PGW or, at the very least, whether PGW was a joint employer. Either way, the Court has already determined as a matter of law that an employment relationship existed between PGW and Karlo as well as PGW and McLure.

PGW will, however, be permitted to present testimony and evidence regarding the scope and nature of Plaintiffs' employment at the relevant time. In other words, evidence of Plaintiffs' contract employee status will be admissible for the limited purpose of presenting to the jury the work situations each faced, including what they understood their arrangement to be with PGW. These facts go to the core of Plaintiffs' claims and PGW's defenses – *e.g.*, the parties' expectations with respect to the employment relationship, including duration and hopes of full-time employment. Accordingly, Plaintiffs' motion in limine regarding contract employment status (ECF No. 495) is **GRANTED IN PART AND DENIED IN PART**.

### H. PLAINTIFFS' MOTION IN LIMINE REGARDING PURPORTED SETTLEMENT NEGOTIATIONS (ECF No. 497)

Plaintiffs (really, Karlo) move the Court to limit the presentation of evidence, testimony, and argument regarding purported "settlement negotiations." In essence, Plaintiffs contend that PGW employees represented to Karlo that he was under consideration for reemployment as a permanent PGW employee, but that he first needed to make "'an issue' go away," which he interpreted to mean his EEOC Charge. To the Plaintiffs, those cryptic remarks constituted an unaccepted offer that was never communicated to counsel and does not comply with the Older Workers' Benefit Protection Act.

In response, PGW represents that it has no intention of arguing that alleged comments made to Karlo constituted a settlement offer. Furthermore, PGW (correctly) notes that nothing about Karlo's subsequent separation from PGW relates in any way to McLure.

From the Court's perspective, PGW has never advanced the theory that Plaintiffs anticipate will be presented at trial and it would be hard-pressed to do so. Instead, PGW previously argued that the comments of Bob Pinchok and Tom Showers, line supervisors who did not have the authority to make any purported settlement offers, were simply benign statements and conjecture of workplace acquaintances. Be that as it may, in light of PGW's representations in its response(s), Plaintiffs' motion in limine regarding purported settlement negotiations is **DENIED AS MOOT**.

### I. PLAINTIFFS' MOTION IN LIMINE REGARDING DISCRIMINATION CLAIMS (ECF No. 499)

Plaintiffs move the Court to limit the presentation of evidence and argument regarding the present status of their discrimination claims. In essence, Plaintiffs ask the Court to exclude from evidence the fact that it has decertified their conditionally-certified collective action and entered judgment on their ADEA disparate impact and disparate treatment claims.

In response, PGW contends that certain limited evidence related to Plaintiffs' EEOC Charge and discrimination claims are relevant to the retaliation claims and PGW's defenses. In doing so, PGW once again requests a limiting instruction on the issue of Plaintiff's underlying claims against PGW.

The Court agrees with the position offered by PGW. Plaintiffs try to have it both ways, so to speak. To begin, they seek to introduce testimony and evidence regarding the underlying facts of their discrimination claims as probative of their good faith belief and PGW's discriminatory animus. Yet they ask the Court to hide from the jury the full picture: that

judgment has been entered on those claims, which are now on appeal before the United States Court of Appeals for the Third Circuit. The Court declines to do so. It instead intends to give a limiting instruction – likely adopted from PGW's proposal – which fairly and accurately portrays the facts regarding Plaintiffs' EEOC Charge, the federal court action, and the pending appeal. Accordingly, Plaintiffs' motion in limine regarding discrimination claims (ECF No. 499) is **DENIED**.

### J. PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE PURPORTED EXPERT TESTIMONY BY JEFFREY P. BELACK (ECF No. 515)

On December 29, 2015, Plaintiffs filed a motion in limine to exclude purported expert testimony by Jeffrey P. Belack. The following day, Plaintiffs filed a notice withdrawing same (ECF No. 520). Accordingly, Plaintiffs' motion in limine to exclude purported expert testimony by Jeffrey P. Belack is **DENIED AS MOOT**.

**SO ORDERED**, this 6th day of January, 2016.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: Bruce C. Fox
Email: bruce.fox@obermayer.com
Andrew J. Horowitz
Email: andrew.horowitz@obermayer.com

David S. Becker
Email: dbecker@freebornpeters.com
Jennifer L. Fitzgerald
Email: jfitzgerald@freebornpeters.com
Tina C. Wills
Email: twills@freebornpeters.com
Robert B. Cottington
Email: rcottington@cohenlaw.com

(via CM/ECF)