IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| RUDOLPH A. KARLO, | ) |  |
|---|---|---|
| Plaintiff, | ) | 2:10-cv-1283 |
| v. | ) |  |
| PITTSBURGH GLASS WORKS, LLC, | ) |  |
| Defendant. | ) |  |
| MARK K. MCLURE, | ) |  |
| Plaintiffs, | ) |  |
| v. | ) |  |
| PITTSBURGH GLASS WORKS, LLC, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM ORDER

Before the Court is a RENEWED MOTION IN LIMINE TO EXCLUDE PURPORTED EXPERT TESTIMONY BY JEFFREY P. BELACK (ECF No. 542) filed by Plaintiffs Rudolph A. Karlo and Mark K. McLure with a brief in support (ECF No. 543); and a MOTION FOR THE COURT TO ACCEPT RENEWED MOTION IN LIMINE TO EXCLUDE PURPORTED EXPERT TESTIMONY BY JEFFREY P. BELACK NUNC PRO TUNC (ECF No. 544) filed by Plaintiffs. Defendant Pittsburgh Glass Works, LLC ("PGW") has filed a brief in opposition (ECF No. 552). Accordingly, the motions are ripe for disposition.

### I. Introduction

The parties, counsel, and the Court are familiar with the background of this case and, therefore, the Court will not recite the facts at length. The following is a brief recitation of the

procedural history relevant to the issues presently before the Court.

On October 21, 2015, the Court entered a Trial Management Order in which it set December 7, 2015 as the deadline for the filing of pretrial narrative statements and motions in limine. In its pretrial narrative statement, PGW listed Jeffrey P. Belack as its damages expert witness.

On December 29, 2015 – three weeks after the Court-ordered deadline – Plaintiffs filed a motion in limine to exclude purported expert testimony by Belack. In their view, Belack intended to offer opinions that had not previously been disclosed in an expert report – *i.e.*, the measure of damages for the retaliation claims as opposed to the underlying discrimination claims.

On December 30, 2015, Plaintiffs filed a notice withdrawing their untimely motion in limine. In doing so, Plaintiffs represented that the parties had met and conferred and reached an agreement regarding this motion in limine. Accordingly, the Court denied Plaintiffs' motion as moot in its January 6, 2016 Omnibus Memorandum Order.

On January 11, 2016 – eight days before the first of two consecutively-scheduled trials is scheduled to commence – Plaintiffs filed a renewed motion in limine to exclude purported expert testimony by Belack as well as a motion for the Court to accept same *nunc pro tunc*.[1] In essence, Plaintiffs argue that Belack's supplemental report ignores the Court's twice-repeated holding that an employment relationship existed between PGW and Plaintiffs. From that perspective, Plaintiffs characterize Belack's limitation of Karlo's back pay entitlement (if any) to two (2) years as arbitrary. Plaintiffs also take issue with Belack having factored into his mitigation analysis Mrs. Karlo's health insurance benefits, including benefits provided by Belcan to

---

1. Plaintiffs attribute the untimeliness of their most recent filing to not having received Belack's supplemental expert report until the evening of January 31, 2015.

2

McLure, and the potential tax implications of a contingent attorneys' fee of thirty-percent on any award of damages.

PGW opposes Plaintiffs' motion in its entirety. For its part, PGW submits that the Court should deny the motion because Plaintiffs fail to point to any law or legal standard to support the exclusion of Belack's testimony. PGW also contends that Plaintiffs' motion is nothing more than a list of criticisms and cross-examination points that go solely to the weight of his proposed testimony.

**II. Discussion**

Plaintiffs' first position – that Belack's analysis is replete with inappropriate legal conclusions – misses the point. This Court has previously held (and reiterated) that PGW was, at the very least, a joint employer of Karlo and McLure for the purposes of ADEA liability. At the same time, however, the Court never determined that the existence of an employment relationship between PGW and Plaintiffs was somehow an appropriate measure of damages. It appears that the point Belack is attempting to make is that, from an accounting perspective, he must consider the fact that Plaintiffs were contract employees – as opposed to Plaintiffs' expert who purportedly uses base earnings as if PGW continued to be their employer despite the March 2009 RIF. To be sure, the Court has already ruled that PGW would be permitted to present testimony and evidence regarding the scope and nature of Plaintiffs' employment at the relevant time. In other words, evidence of Plaintiffs' contract employee status is admissible for the limited purpose of presenting to the jury the work situations each faced, including what they understood their arrangement to be with PGW. As this Court has already ruled, these facts go to the core of Plaintiffs' claims and PGW's defenses – *e.g.*, the parties' expectations with respect to the employment relationship, including duration and hopes of full-time employment.

Plaintiffs' second position – that Belack makes factual assumptions unsupported by the record – has merit. Throughout his report, Belack assumes that Karlo had the option of further employment with Belcan following the end of his employment contract. In support, Belack opines that, because Duffus does not explain away why Karlo did not continue to work for Belcan, Belack may assume that Karlo had the opportunity or right to do so. For instance, Belack states that "Duffus failed to document subsequent events such as why Karlo did not continue working for Belcan in another assignment or his lack of success in searching for securing mitigating employment." (ECF No. 543-1 at 4). Elsewhere in his report, Belack continues to advance this theory:

> Karlo could have continued his employment with Belcan Corporation after the temporary assignment ended at PGW and thus mitigated any earnings loss. We have not been provided any documentation or reasoning as to why this employment relationship did not continue forward.

*Id.* at 5. Furthermore, Belack accuses Duffus of not completing "his Karlo due diligence," because

> We have no support for why Karlo ended his employment with Belcan and what options were provided to Karlo after the temporary PGW assignment through Belcan ended. The significant earnings that Karlo could have made by continuing employment with Belcan should have been further vetted by Duffus.

*Id.* at 8-9. Belack's mitigation analysis[2] includes similar factual assumptions: "Karlo could have continued to work for Belcan after the PGW assignment through Belcan ended but chose unemployment compensation." *Id.* at 11. These purported facts find no support in the record, to be sure. And they are rooted in rank speculation. *See also U.S. Fire Ins. Co. v. Kelman Bottles LLC*, No. 11CV0891, 2014 WL 3890355, at *6 (W.D. Pa. Aug. 8, 2014) (granting in part a

---

2. The Court notes that "[f]ailure to mitigate damages is an affirmative defense to a claim for money damages under the ADEA for which the employer bears the burden of proof." *Yingst v. Texas New Mexico Newspaper P'ship*, No. 1:12-CV-1803, 2014 WL 3952611, at *11 (M.D. Pa. Aug. 13, 2014) (citing *Caufield v. Center Area Sch. Dist.*, 133 F. App'x 4, 10 (3d Cir. 2005)). Belack's report(s) gets close to shifting this burden back onto Plaintiff(s).

4

motion in limine to exclude Belack and Duffus, who were serving as co-experts, from offering speculative testimony contradicted by the actual events that occurred in this case). Accordingly, the Court will not permit Belack to testify at trial that Karlo could have continued to work for Belcan after his contract employment ended, unless PGW comes forward with actual / admissible evidence regarding same.

Plaintiffs' third position – that Belack arbitrarily limits Karlo's back-pay entitlement to two (2) years from the date his contract employment ended – is misplaced. Yet again, Plaintiffs misconstrue Belack's expert report. His opinion is based on the evidence that Karlo obtained employment eleven months after the purported retaliation, ceased looking for alternative employment, and testified that he is happy with his current position and is not looking for new work. Plaintiffs may certainly cross-examine Belack on this point, but the Court will not preclude him from opining on the appropriate measure of back-pay.

Plaintiffs' fourth position – that health benefits of Mrs. Karlo are an inadmissible collateral source – fails. The case relief upon by Plaintiffs, *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3d Cir. 1983), is distinguishable. There, our court of appeals held that "unemployment benefits should not be deducted from a Title VII back pay award." *Id.* at 83. *See also McDowell v. Avtex Fibers, Inc.*, 740 F.2d 214, 215–17 (3d Cir.1984), *vacated and remanded on other grounds*, 469 U.S. 1201 (1985) (applying *Craig* in an ADEA action and holding that unemployment benefits could not be offset). Unlike that case, Belack is opining that Karlo's receipt of benefits through his spouse has mitigated his damages relating to his lack of benefits. Plaintiffs have not cited any authority that this opinion should not be presented to the jury. Accordingly, the Court will not prohibit Belack from testifying on this point at trial.

Plaintiffs' fifth position – that Belack improperly opines that McLure should have mitigated his benefits loss through Belcan – is without merit. At most, Plaintiffs raise a factual dispute regarding this issue. *See* Pls.' Br. at 5 ("Moreover, it is not even certain that McLure would have been eligible for coverage . . . ."). Accordingly, the Court will not prohibit Belack from testifying on this point at trial.

Plaintiffs' sixth and final position – that Belack improperly considers attorney's fees – has some degree of merit. Belack claims to have been "instructed" to assume that attorney's fees would equate to thirty-percent of any individual plaintiff award." (ECF No. 543-1 at 13). From that premise, Belack proceeds to use that fee to negate any tax impact on Plaintiffs. In the Court's view, however, Belack's opinion regarding the potential for a contingent fee delves into matters that have no basis in fact. For instance, Belack assumes that Plaintiffs and counsel have a contingent fee agreement, which is undoubtedly a confidential matter between Karlo / McLure and their attorneys. Accordingly, the Court will not permit Belack to testify to this assumption at trial.

### III. Conclusion

For the reasons hereinabove stated, Plaintiffs' motion for the Court to accept their renewed motion in limine *nunc pro tunc* is **GRANTED**; and their motion in limine to exclude purported expert testimony by Jeffrey P. Belack is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**, this 15th day of January, 2016.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: Bruce C. Fox
Email: bruce.fox@obermayer.com
Andrew J. Horowitz
Email: andrew.horowitz@obermayer.com

David S. Becker
Email: dbecker@freebornpeters.com
Jennifer L. Fitzgerald
Email: jfitzgerald@freebornpeters.com
Tina C. Wills
Email: twills@freebornpeters.com
Robert B. Cottington
Email: rcottington@cohenlaw.com

(via CM/ECF)