# IN IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **RUDOLPH A. KARLO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:10-cv-1283** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PITTSBURGH GLASS WORKS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is DEFENDANT'S COMBINED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION TO ALTER OR AMEND JUDGMENT, AND MOTION FOR NEW TRIAL filed by Pittsburgh Glass Works, LLC ("PGW"). The issues have been fully-briefed by PGW and Plaintiff Rudolph A. Karlo in their memoranda (ECF No. 579, 584, 587, 590), and the factual record has been thoroughly developed. Accordingly, the motions are ripe for disposition.

### I. Background[1]

A four-day jury trial in this case was conducted from January 19 – 22, 2016 on Karlo's individual retaliation claim brought under the Age Discrimination in Employment Act ("ADEA"). At the close of Karlo's case-in-chief, PGW moved for judgment as a matter of law under Rule 50(a). Karlo opposed the motion, which the Court denied on the record. After its deliberations, the jury returned a verdict in favor of Karlo and against PGW, finding PGW liable

---

1. The Court has previously detailed the extensive factual background and procedural history of this action in several Memorandum Opinions, and, to the extent that they are relevant, it incorporates those discussions by reference. *See* 2014 WL 1317595, at **1-14 (W.D. Pa. Mar. 31, 2014); 2015 WL 5156913, at **1-10 (W.D. Pa. Sept. 2, 2015); 2015 WL 5782062, at **1-2 (W.D. Pa. Oct. 2, 2015); 2016 WL 69651, at **1-2 (W.D. Pa. Jan. 6, 2016).

of a willful violation of the ADEA and awarding Karlo $362,052.00 in back pay and $560,008.00 in front pay for a total of $922,060.00. PGW timely filed its post-trial motions.

PGW now renews its motion for judgment as a matter of law under Rule 50(b) and, in the alternative, moves the Court to alter or amend the judgment under Rule 59(e) or to order a new trial under Rule 59(a). Karlo opposes the requested relief. For the reasons that follow, the Court will deny the motions.

## II. Discussion

### A. PGW's Renewed Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) is the procedural mechanism by which a party may move for judgment as a matter of law in a jury trial. It provides:

> (1) [i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and
>
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

If the court does not grant the motion under Rule 50(a), Rule 50(b) allows a party to file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. Rule 50(b) further provides that "[i]n ruling on the renewed motion, the court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

"Courts apply the same standard to motions made before the jury verdict pursuant to Rule 50(a) and after the jury verdict made pursuant to Rule 50(b)." *Sallitt v. Stankus*, 720 F. Supp. 2d 645, 648 (M.D. Pa. 2010) (citing *McDaniels v. Flick*, 59 F.3d 446, 453 (3d Cir. 1995)). "Such a

motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citing *Wittekamp v. Gulf & W., Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993)). "[I]n performing this narrow inquiry, [the court] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury." *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citing *Lightning Lube, Inc.*, 4 F.3d at 1166).

"Although judgment as a matter of law should be granted sparingly, a scintilla of evidence will not enable the non-movant to survive a Rule 50 motion." *Goodman v. Pennsylvania Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002) (citing *Lightning Lube, Inc.*, 4 F.3d at 1166). "'The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.'" *Lightning Lube, Inc.*, 4 F.3d at 1166 (quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)). Accordingly, "[s]uch a judgment should only be granted if 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" *Raiczyk v. Ocean Cty. Veterinary Hosp.*, 377 F.3d 266, 269 (3d Cir. 2004) (quoting *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001)). With this standard in mind, the Court turns to the parties' contentions.

### 1. Prima Facie Case

In support of its Rule 50(b) motion, PGW argues that Karlo failed to establish a prima facie retaliation claim. Under the ADEA, a prima facie case of retaliation requires a plaintiff to show that: "(1) s/he was engaged in a protected activity; (2) the defendant took an adverse

employment action after or contemporaneous with the plaintiff's protected activity; and (3) a causal link exists between the plaintiff's protected activity and the adverse employment action." *McClement v. Port Auth. Trans–Hudson*, 505 F. App'x 158, 162-63 (3d Cir. 2012) (citing *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 508-09 (3d Cir. 2004)).

At the conclusion of trial, the Court instructed the jury on the applicable law. It stated that "[u]ltimatley, [the jury] must decide whether Mr. Karlo's EEOC charge had a determinative effect on the end of [his] contract employment position and/or PGW's decision to not (re)-hire him as a permanent employee." Day 4 Tr. at 29-30. The Court further instructed the jury that "'determinative effect' means that but for Mr. Karlo's EEOC charge, the ending of [his] contract employment and/or PGW's decision to not (re)-hire him as a permanent employee would not have occurred." *Id.* at 30

From PGW's perspective, Karlo "failed to present any evidence whatsoever that the existence of his EEOC charge played a role in PGW's employment decision and, thus, judgment as a matter of law is appropriate." Def.'s Br. at 11-12. Relatedly, PGW also claims that Karlo's entire claim rests on his own suspicion and conjecture. And – in its unrelenting approach – PGW contends that Karlo failed to provide evidence of unusually suggestive temporal proximity between his protected activity and the adverse employment action. For his part, Karlo urges the Court to focus on the credibility determinations made and the reasonable inferences drawn by the jury in reaching its verdict, which, in his view, PGW conveniently ignores or minimizes in its attempt to relitigate the parties' competing versions of events. The Court agrees with Karlo.

### a. Sufficiency of the Evidence

PGW first points to the trial testimony of PGW decision-makers and employees – Plant Manager Mark Soderberg, Vice President of Human Resources Robert McCullough, Human

Resources Manager John Felker, and the value stream managers for Line 1 and Line 2, Robert Pinchcock and Tom Showers – as dispositive of this issue. In doing so, PGW highlights that Soderberg testified that he did not learn of the EEOC charge (from Karlo, McCullough, or otherwise) until after he decided not to hire Karlo into a permanent production supervisory position at his facility. PGW also stresses that all other PGW witnesses who worked at the Creighton plant were consistent in their unimpeached testimony that they knew nothing about Karlo's EEOC charge in the months leading up to the relevant employment decision. As for McCullough, PGW recognizes that he was aware of the EEOC charge, but notes that he "did not connect that fact when he discussed the temporary, contract supervisor positions with Mr. Soderberg," was not a decision-maker with respect to Karlo, and never disclosed the filing with anyone at Creighton. Def.'s Br. at 14.

Yet PGW asks the Court to, in essence, discount Karlo's testimony in favor of its witnesses.[2] *See* Def.'s Br. at 5 ("In response, Plaintiff will undoubtedly point to his self-serving and uncorroborated testimony that, at his termination session and after the decision to end his contract employment was made, Plaintiff – ***not*** Mr. Soderberg – may have asked if he was being let go 'because of 'the issue.'"") (emphasis in original). The Court is not permitted to do so. After all, the Court "must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference."

---

2. Throughout, PGW seems to imply that where, as here, several witnesses have matching stories that align with its version of events and counters the testimony of a single plaintiff, the Court should weigh that in its favor. That position is contrary to the Court's final instructions to the jury:

> You are not required to accept witness testimony even though the testimony is uncontradicted and the witness is not discredited . . . . Also, the weight of evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact or the number of exhibits offered by a party. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Day 4 Tr. at 23-24.

*Raiczyk*, 377 F.3d at 269 (citing *Dudley v. S. Jersey Metal, Inc.*, 555 F.2d 96, 101 (3d Cir.1977) (quoting *Fireman's Fund v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir. 1976))).

PGW also seeks for the Court to ignore Karlo's testimony regarding his conversations with Pinchok and Showers in which they allegedly indicated to make "the issue" go away if he wanted to secure the permanent position. *See, e.g.*, Day 2 Tr. at 13-14 ("[Pinchok said if you want a job here, Mark Soderberg, which is plant manager, and John Felker, and he's the HR guy, would be waiting to he[ar] from me. Well, I didn't know what to say. And all he said to me, he said, you know what to do. He said, now you know what to do.");[3] *id.* at 17 ("[Showers] said, Rudy, did you talk to anybody? I looked at Tom, I says, Tom, what are you talking about? Because I didn't want to mention anything about the EEOC claim, which I didn't. And he said, you know. I said – I'm prompting him. I says, Tom, what are you talking about? He says, you know. I says, is this about the issue that Bob Pinchok addressed with me a couple -- a week or so ago? And he said, yes."). PGW further ignores Karlo's testimony regarding his termination meeting with Soderberg and Felker where Karlo claims to have brought up "the issue" and Soderberg allegedly told him that "Downtown" made the decision to end his employment.[4] *Id.* at 19.

This case turned on the credibility of the witnesses.[5] Based on the verdict, the jury evidently disbelieved PGW's witnesses and found Karlo credible, drawing several inferences in

---

3. Karlo and Pinchok both testified that Pinchok told Karlo that he (Pinchok) would deny that their conversation ever occurred. *See* Day 2 Tr. at 14; 101.

4. PGW claims that Karlo was impeached by his own deposition testimony in which he recounted the termination meeting and did not state that he asked about "the issue." Even so, the jury still could have believed his testimony. As the Court instructed, "[i]f [they] believe[d] any witness has been impeached and thus discredited, [they] may give the testimony of that witness such credibility, believability, if any, as [they] think it may deserve." Day 4 Tr. at 23.

5. This is not the first instance in which the Court has made this observation to counsel. As the Court stated in its Memorandum Opinion ruling on PGW's motion(s) for summary judgment:

his favor: that Pinchok and Showers encouraged Karlo to withdraw his EEOC charge on behalf of the company, that McCullough played a role in the relevant decision-making, and that after Karlo refused to withdraw his EEOC charge, PGW terminated his contract employment position and denied him a permanent employment position. In other words, the jury apparently found a causal connection between the end of his contract employment / PGW's decision thereafter to not hire him as a permanent employee and his EEOC charge. The Court will not disturb the jury's finding. To be sure, there was sufficient evidence presented at trial upon which the jury could properly return a verdict for the plaintiff. And it did so. Accordingly, the motion for judgment as matter of law on this basis will be denied.

### b. Protected Activity / Temporal Proximity

PGW's next argument is twofold: first, that Karlo did not present evidence (or cite any legal authority) that "protected conduct" can be (in)-action by the EEOC or awaiting an EEOC determination; and second, that he did not show an usually suggestive temporal proximity between the filing of his EEOC charge and PGW's decision to end his contract employment / not rehire him as a permanent employee. The Court is not persuaded.

"With respect to 'protected activity,' the anti-retaliation provision of [the ADEA] protects those who participate in certain [ADEA] proceedings (the 'participation clause') and those who oppose discrimination made unlawful by [the ADEA] (the 'opposition clause')." *Moore v. City*

---

Moreover, it is incorrect, not to mention self-serving, for PGW to rely on the deposition testimony of the relevant decision-makers to the exclusion of contrary evidence in positing that they knew nothing of this litigation before theglassBYTEs.com article—even when McCullough himself had been involved in preparing the response to the EEOC charge. The trier of fact (*i.e.*, not PGW) must determine whether the testimony of Karlo and McLure is credible in light of the relevant decision-makers. In addition, it also remains unclear as to whether there was ever any discussion of the EEOC charge in either plant, what constituted the so-called "issue"/"the situation," and how the decisions to end the placements were made. Contrary to PGW's suggestion, these disputed facts cannot be dismissed as watercooler gossip; they are instead questions for a jury.

2015 WL 5156913, at *18 (W.D. Pa. Sept. 2, 2015).

*of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citing *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)).[6]  The filing of an EEOC charge of age discrimination constitutes protected activity under the ADEA, to be sure.  *See Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995): *see also Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) ("[T]here is no hard and fast rule as to whether the conduct in a given case is protected.") (citing *Barber*, 68 F.3d at 702).

At trial, Karlo claimed that PGW retaliated against him in violation of the ADEA for having filed and maintained a charge of discrimination with the EEOC.[7]  As the Court recounted:

> In this case Mr. Karlo contends that he filed a charge of discrimination against PGW with the EEOC, that PGW personnel encouraged him to withdraw his EEOC charge, and that he refused to do so, after which PGW allegedly terminated his contract employment position and denied him a permanent employment position.

Day 4 Tr. at 27; *see also* Day 1 Tr. at 36.  The Court thus instructed the jury that, to prevail on his retaliation claim, Karlo had to prove by a preponderance of the evidence that he "engaged in

---

6. The anti-retaliation provision of the ADEA provides, in relevant part, as follows:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).  "'Because the anti-retaliation provisions of the [ADA, ADEA, and Title VII] are nearly identical . . . [,] precedent interpreting any one of these statutes is equally relevant to interpretation of the others.'" *Proudfoot v. Arnold Logistics, LLC*, 629 F. App'x 303, 306 n.3 (3d Cir. Oct. 8, 2015) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)); *see also Hubbell v. World Kitchen, LLC*, 688 F. Supp. 2d 401, 437 (W.D. Pa. 2010) ("[C]ourts have construed the protection afforded to employees under the ADEA's antiretaliation provision to be coextensive with that afforded to employees under Title VII's antiretaliation provision.") (citations omitted).

7.  In its ruling on the motions in limine, the Court remarked on the parties' (remarkable) dispute regarding the protected activity element of an ADEA retaliation claim.  *See* 2016 WL 69651, at *4 n.3 (W.D. Pa. Jan. 6, 2016) ("[T]his issue could perhaps be cured by instructing the jury, for instance, that Plaintiff(s) engaged in protected activity when he filed *and maintained* his charge of age discrimination with the EEOC – both of which are undisputed facts.  An instruction of this sort would still allow Plaintiffs to argue their theory of the case, without the Court resolving or weighing into this disputed issue.") (emphasis in original); *see also* Day 4 Tr. at 4-6 (discussing with counsel, at the charge conference, the Court's final jury instructions on this element).

protected activity when he filed and *maintained* his charge of age discrimination with the EEOC." *Id*. at 29 (emphasis added). Based on the verdict, the jury must have found that Karlo had met his burden in proving this element his claim.

PGW now attempts to isolate the initial filing of the EEOC charge as the only form of protected activity in this case.[8] From that premise, it argues that the five month gap between the filing of the charge on February 2, 2010 and the relevant employment action on July 12, 2010 is not close enough to support a causal connection. While PGW is correct that several courts have held that this span of time was insufficient, it seems to ignore that the jury must have believed Karlo's testimony regarding his conversations with Pinchok and Showers, which occurred just weeks (or perhaps days) before the relevant adverse employment action. *See* Day 2 Tr. at 12 (recounting that his conversation with Pinchok took place in mid- to late-June 2010); *id.* at 16 (recounting that his conversation with Showers took place a week or so after his conversation with Pinchok).

Be that as it may, the jury was still entitled to find a causal connection based on more than just timing – even assuming that the filing of the EEOC charge constitutes the only form of protected activity. As the Court instructed:

> As to the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing; that is, PGW's action followed shortly after PGW became aware of Mr. Karlo's protected activity. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mr. Karlo or a change in demeanor toward him. Ultimately, you must decide whether Mr. Karlo's EEOC charge had a determinative effect on the end of Mr. Karlo's contract employment position and/or PGW's decision not to rehire him as a permanent employee.

---

8. It remains somewhat unclear whether PGW contends that maintaining / refusing to withdrawal an EEOC charge could constitute "protected activity." Perhaps this is because PGW adamantly disputes that it ever demanded or encouraged Karlo to do so.

Day 4. Tr. at 29-30; *see also Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) ("In the absence of such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."). At trial, Karlo presented sufficient evidence upon which the jury could (and did) find that this element was satisfied. As such, the Court will not disturb the jury's finding. Accordingly, the motion for judgment as matter of law on this basis will be denied.

### 2. Pretext

PGW argues that it articulated legitimate, non-discriminatory reasons and that Karlo failed to prove that its employment decision was pretext for illegal retaliation.[9] In response, Karlo contends that he presented evidence that showed PGW's proffered reasons were untrue and repeatedly shifted throughout the proceedings.

In the absence of direct evidence of retaliation, retaliation claims under the ADEA "typically proceed under the *McDonnell Douglas* framework." *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). "Under the *McDonnell Douglas* framework, a plaintiff asserting a retaliation claim first must establish a prima facie case . . . ." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (citation omitted). If the plaintiff succeeds, the burden of production shifts "to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action." *Id.* (citation omitted). If the employer makes that showing, the burden of production returns to the plaintiff to establish that the proffered justification for the adverse

9.  In its reply brief, PGW offers two purported legitimate, non-discriminatory reasons for its decisions to end Karlo's contract employment position and to not rehire him as a permanent employee. *See* Reply Br. at 9-10. First, in addressing Karlo's retaliatory discharge theory, PGW submits that it simply made a business decision to stop using temporary contractors as supervisors at Creighton. Second, in addressing Karlo's retaliatory failure to rehire theory, PGW submits that it only sought to hire supervisors with demonstrated production supervisory experience.

action is pretextual.  *Id.* (citation omitted).  At all times, the burden of persuasion remains with the plaintiff.  *Id.*  "In other words, Plaintiff must establish that his protected activity was a 'but-for' cause of the adverse employment action."  *Isenhour v. Outsourcing of Millersburg, Inc.*, No. 1:14-CV-1170, 2015 WL 6447512, at *9 (M.D. Pa. Oct. 26, 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)).

"To make a showing of pretext, 'the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a . . . determinative cause of the employer's action.'"[10]  *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  *Id.* (citations and quotation marks omitted).  For instance, "[i]f a plaintiff demonstrates that the reasons given for h[is] termination did not remain consistent, beginning at the time they were proffered and continuing throughout the proceedings, this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record."  *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 284 (3d Cir. 2001) (citation omitted).  At the same time, "pretext is not shown by evidence that 'the employer's decision was wrong or mistaken, since the factual dispute at issue is whether [retaliatory] animus motivated the employer, not whether the

---

10.  At trial, the Court then instructed that "'[d]eterminative effect' means that but for Mr. Karlo's EEOC charge, the ending of Mr. Karlo's contract employment and/or PGW's decision not to rehire him as a permanent employee would not have occurred."  Day 4 Tr. at 30.

employer is wise, shrewd, prudent, or competent.'" *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (quoting *Fuentes*, 32 F.3d at 765).

As for the retaliatory discharge theory, the jury must have believed that PGW's proffered explanation was false. At trial, Karlo testified that the following occurred at the termination meeting:

> They were waiting for me, the plant manager and the HR, John Felker, was in the plant manager's office, and Bob [Pinchok] knocked. We go in, and Mark [Soderberg] said to me, he said, I guess you know why you're here. And I said, I think so; because of the issue. And he did not look at me. He turned his head, kind of looked away from me. He didn't want to face me eye-to-eye. Told me to have a seat. My services at Creighton are no longer needed. That I'm taken aback. I says, a second time, released from the same Company, and I was doing a good job, and that's all I heard, including from him, the plant manager. And I asked him, I said, well, who made this decision? And he said, Downtown. Downtown made this decision.

Day 2 Tr. at 19. Later, Soderberg offered a competing version of events – that he decided to quit using contract employees as production supervisors. But of the two other contract production supervisors who PGW claims to have eliminated as part of this conveniently-timed change, one (Hal Reader) had already quit voluntarily, and the other (Ed Watson) was a final supervisor (not a production supervisor). From this evidence, the jury could have believed that PGW's proffered explanation was a post-hoc fabrication designed to mask its retaliation, or otherwise did not actually motivate the employment action.

As for the retaliatory failure to rehire theory, Karlo points to competing explanations by PGW regarding its decision to not hire him, which the jury similarly could have viewed as evidence tending to show pretext. Throughout, PGW has maintained that it did not hire Karlo because he lacked the requisite three years of manufacturing supervisory experience—a requirement that Soderberg and Felker added for the Creighton facility at this time. It then claimed, through Felker's testimony at trial, that Karlo was not a "go-getter" and lacked

leadership skills.  Day 2 Tr. at 190-91.  Several PGW witnesses seemed to contradict that explanation.  *See* Day 2 Tr. at 100; Day 3 Tr. at 43.  Be that as it may, the evidence also showed that Karlo held supervisory roles since at least 1988, which could have led the jury to find that PGW's proffered explanation regarding his so-called lack of experience was so weak that it was unworthy of credence.[11]  *See* Day 1 Tr. at 74, 77.  In other words, that it was pretextual. Accordingly, the motion for judgment as matter of law on this basis will be denied.

### B.  PGW's Motion to Alter or Amend Judgment

"Federal Rule of Civil Procedure 59(e) addresses what are sometimes called motions for reconsideration, and provides that '[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.'"  *Lizardo v. United States*, 619 F.3d 273, 282 (3d Cir. 2010).  "The scope of a motion for reconsideration," as our court of appeals has held, "is extremely limited."  *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).  "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence."  *Id.* (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)).  "'Accordingly, a judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'"  *Id.* (quoting *Howard Hess Dental Labs., Inc.*, 602 F.3d at 251).

---

11.  Although the evidence showed that Karlo had only five and one-half months of *production* supervisory experience, the jury apparently gave that fact little weight.

### 1.  Damages Award

PGW argues that the Court should alter or amend the damage award because it is contrary to the jury instructions and applicable law.  Moreover, it contends (1) that the jury impermissibly doubled the front pay award; and (2) that the damages award is otherwise unreasonable considering factors such as duration and mitigation.  For his part, Karlo suggests the PGW is encouraging the Court to "engage in rank speculation by dissecting the [j]ury's front pay award to determinate whether it included liquidated damages."  Pl.'s Br. at 9.

### a.  Front Pay

"[W]hen a jury finds that an employer willfully violated the ADEA, the basic damages award may be doubled under th[e] liquidated damages provision" incorporated into the statute. *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 372 (3d Cir. 2004).  This remedy is limited to an award of back-pay and cannot be used to double front pay.  *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 772 (3d Cir. 1989) (citing *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 383-84 (3d Cir. 1987)).

At trial, the Court instructed the jury on the applicable law regarding the availability of liquidated damages, although it did not use the term.  As the Court explained:

> If you find that Mr. Karlo is entitled to recover damages for lost wages or benefits, you must determine if PGW's conduct was willful.  If you find that PGW willfully violated the law, then you must award the Plaintiff double or twice the amount of monetary damages for lost wages and benefits that you have found to which he may be entitled.  Mr. Karlo has the burden of proving willfulness by a preponderance of the evidence

Day 4 Tr. at 32.  The Court further instructed that the jury "may determine an award separately of a monetary amount equal to the present value of any future wages and benefits that Mr. Karlo would reasonably have earned from PGW had Mr. Karlo not had his contract employment end

and had he been directly hired by PGW for the period from the date of [their] verdict through a reasonable period of time in the future." *Id.* at 33.

The verdict slip was consistent with those instructions. It stated, in relevant part, as follows:

> 2. DO YOU FIND BY A PREPONDERANCE OF THE EVIDENCE THAT THE UNLAWFUL RETALIATION OF PITTSBURGH GLASS WORKS, LLC ("PGW") AGAINST PLAINTIFF RUDOLPH A. KARLO WAS WILLFUL?
>
> YES: _____          NO: _____
>
> IF YOU FIND THAT PITTSBURGH GLASS WORKS, LLC ("PGW") WILLFULLY VIOLATED THE LAW, THEN YOU MUST AWARD PLAINTIFF DOUBLE THE AMOUNT OF MONETARY DAMAGES FOR LOST WAGES AND BENEFITS.
>
> **PROCEED TO QUESTION NO. 3.**
>
> 3. IF YOU FOUND THAT DEFENDANT, PITTSBURGH GLASS WORKS, LLC ("PGW") UNLAWFULLY RETALIATED AGAINST PLAINTIFF RUDOLPH A. KARLO IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA"), STATE THE AMOUNT OF MONETARY DAMAGES, IF ANY, WHICH YOU AWARD TO HIM FOR:
>
> A.     BACK PAY:                    $_____
>
> B.     FRONT PAY:                   $_____
>
> **YOUR DELIBERATIONS ARE COMPLETED. PLEASE SIGN AND DATE THIS FORM AND SUMMON THE COURTROOM DEPUTY.**

ECF No. 572. On the verdict slip, the jury indicted that it found a willful violation (it marked the line with an "X" and wrote "yes"), and it awarded $362,052.00 in back pay and $560,008.00 in front pay.

PGW now contends that the jury failed to comprehend the differences between "lost wages and benefits" and "future wages and benefits" and mistakenly doubled the front pay award. Dividing the base back pay award of $181,026.00 (the lost wages and benefits before

doubling) by 5.5 years (the period from the adverse employment action on July 12, 2010 through the date of judgment on January 22, 2016), PGW reaches a yearly average award of $32,913.82, which it admits is generally consistent with the evidence produced at trial regarding Karlo's current salary compared to a salary he could have expected had he been hired into the position he sought. PGW then suggests that the jury should have used that yearly average to calculate nine years[12] in front pay, for a total of $296,244.36, which is "far less than the $560,0008.00 that the jury awarded." Def.'s Br. at 26; *see also id.* ("Obviously, the front pay award and back pay award should have some relation to one another since damages must be reasonable and punitive damages are not available in an ADEA retaliation suit."). And, in PGW's view, because $296,244.36 is "quite close to one half of the awarded value[,] . . . it is clear that the jury awarded double their front pay award." *Id.* PGW thus asks the Court to, at a minimum, reduce the front pay number to $280,004.00 (it is unclear how exactly PGW reaches that figure).

PGW's position is hardly more than guesswork fueled by its dissatisfaction with the verdict. In fact, PGW's opening brief says little, if anything, about the report and testimony of Karlo's damages expert, David Duffus. He opined that Karlo sustained damages ranging from $526,479 under his "Scenario 1" to $977,579 under his "Scenario 2."[13] As for "Scenario 2," Duffus opined that Karlo was entitled to either $412,536 or $454,200 in lost front wages, depending on whether the damages were discounted. Based on these figures, Karlo suggests that the jury reached its front pay award, without doubling, by adding together the discounted lost

---

12. In its brief, PGW states, without citing to the record, that Karlo "testified that he would work until retirement age at 65.5 (nine more years)." Def.'s Br. at 19. At trial, Karlo actually testified that he anticipated working "at least 'til [his] normal retirement age, which is 66 and a half years old, for [him] to get Social Security" and that "[he] might have to work indefinitely." Day 2 Tr. at 29. As of the date of his testimony, Karlo was fifty-eight-years-old. Day 1 Tr. at 70.

13. At trial, Duffus testified that the Scenario 1 is "based on an assumption that Mr. Karlo would have been re-hired at PGW in August of 2010, at a salary and with benefits consistent with what he earned at PGW at the time of the reduction in force when he lost his job in March of 2009" and that Scenario 2 is "based on the wage that Mr. Karlo was earning at the time he was working as a contract employee for PGW." Day 3 Tr. at 89-90.

front wages claimed under "Scenario 2" with the claimed damages for the timing effect of taxes ($115,894), about which Duffus also testified.

To be sure, the jury made their findings and awarded damages based on their judgment as to the credibility and weight that they felt the evidence deserved. As part of their verdict, the jury decided that Karlo was entitled to $560,008.00 in front pay, which was within the amount that they could have properly awarded under the scenarios provided by Duffus. The mere fact that the Court has been unable to mathematically deduce precisely how the jury arrived at such a figure does not mandate that the jury's verdict should be overturned. *See New Mkt. Inv. Corp. v. Fireman's Fund Ins. Co.*, 774 F. Supp. 909, 917 (E.D. Pa. 1991). And where, as here, a case involves "disparate mathematical calculations from which the jury may select, it is beyond the discretion of the court to say that the jury might have miscalculated when its final award was within the amount the jury could have properly awarded and there are no apparent miscalculations." *Young v. Lukens Steel Co.*, 881 F. Supp. 962, 976 (E.D. Pa. 1994). Accordingly, the motion to alter or amend judgment on this basis will be denied.

### b. Duration / Mitigation

"Front pay may be awarded 'for a reasonable future period required for the victim to reestablish her rightful place in the job market.'" *Buffington v. PEC Mgmt. II, LLP*, No. 1:11-CV-229, 2014 WL 2567181, at *8 (W.D. Pa. June 6, 2014) (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 890 (3d Cir. 1984)). "In calculating a front pay award, the jury must consider the expected future damages caused by defendant's wrongful conduct from the date of judgment to retirement." *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987). "A plaintiff, of course, has a duty to mitigate damages, and his new salary will be deducted from the old to avoid a windfall award." *Id.*

From PGW's perspective, the verdict amounted to a windfall for Karlo, a contract employee, because the jury allegedly awarded him nine years' worth of front pay. PGW further protests the front pay award by arguing that his mitigation efforts ceased in 2011, and not 2014 or 2015 as Mrs. Karlo testified at trial. *See* Day 3 Tr. at 133.

PGW's position misses the mark. It repeatedly stresses that the jury awarded Karlo nine years' worth of front pay. But, in doing so, it once again fails to account for Duffus' Scenario 2 under which Karlo claimed an annualized amount of $87,840.00 per year – equating to a little more than six years in front pay ($560,008.00 / $87,840.00) even before the timing effect of taxes are taken into account. PGW also makes much ado about Mrs. Karlo's testimony, claiming that the plaintiff sprung new evidence at trial regarding his mitigation efforts without ever having disclosed it during discovery. *See, e.g.*, Def.'s Br. at 24 ("To the extent Plaintiff relied on unproduced evidence and introduced such evidence to the jury, a damage award reflecting or relying upon this undisclosed evidence is wholly inappropriate."). Yet it never objected to her testimony at trial. *See* Day 3 Tr. at 128-33. And, in fact, PGW did not even cross-examine Mrs. Karlo. PGW thus waived this particular objection. Be that as it may, the jury apparently believed Karlo's evidence on the issue of mitigation. Accordingly, the motion to alter or amend judgment on these grounds will be denied.

### 2. Willfulness

PGW next asks that the Court to alter or amend the judgment to remove the finding of willfulness, arguing that there is no evidence in the record to support same. Karlo, not surprisingly, disagrees.

"Willfulness is significant because the ADEA provides double damages when the employer's discriminatory conduct is willful." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d

1089, 1099 (3d Cir. 1995) (citing 29 U.S.C. § 626(b)). "The double recovery is punitive and is intended to deter willful conduct." *Id.* (citing *Trans–World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125 (1985)). "[T]he issue of whether an ADEA violation is willful depends not on any additional proof adduced by a plaintiff in excess of the evidence required to sustain an ADEA claim but whether the facts of the case meet the legal definition of willfulness, *i.e.*, did the employer know or show a reckless disregard for the fact that its conduct was prohibited by the ADEA?" *Zampogna v. Sheriff of Westmoreland Cty., Pa.*, No. CIV.A. 13-233, 2013 WL 1909146, at *2 (W.D. Pa. May 8, 2013) (citing *Starceski,* 54 F.3d at 1099) (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 617 (1993))).

The Court acknowledges the conflicting testimony regarding Karlo's discussions with Pinchock and Showers as well as his termination meeting with Soderberg and Felker, but recognizes that it is "obliged to view the evidence in the light most favorable to [the plaintiff], the verdict winner." *Starceski,* 54 F.3d at 1099. Looking at the record this way, the Court reiterates that the jury evidently disbelieved PGW's witnesses and found Karlo credible, drawing several reasonable inferences in his favor: that Pinchock and Showers encouraged Karlo to withdraw his EEOC charge on behalf of the company, that McCullough played a role in the relevant decision-making, and that after Karlo refused to withdraw his EEOC charge, PGW terminated his contract employment position and denied him a permanent employment position. On this record, a jury acting reasonably could (and did) find that PGW either "knew or showed reckless disregard" for its statutory duty to avoid retaliating against Karlo because of his protected activity. *See id.* Accordingly, the motion to alter or amend judgment to remove the finding of willfulness will be denied.

### 3. Sufficiency of the Evidence

At the end of its Rule 59(e) motion, PGW tacks on a paragraph asking the Court to alter or amend the judgment because the evidence does not support the verdict. Incorporating its earlier arguments by reference, PGW again claims that Karlo did not establish his prima facie case and cannot prove pretext. For the reasons set forth above, the motion to alter or amend on this basis will be denied.

### C. PGW's Motion for New Trial

Federal Rule of Civil Procedure 59(a) sets forth the grounds for a new trial. It states that "[t]he court may, on motion, grant a new trial on all or some of the issues--and to any party-- . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A new trial should be granted only where the 'great weight' of the evidence cuts against the verdict and 'where a miscarriage of justice would result if the verdict were to stand.'" *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc))). "[T]his stringent standard is necessary to ensure that a district court does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *Sheridan*, 100 F.3d at 1076 (citations omitted). And where, as here, a Rule 59 motion is based on allegations of improper or prejudicial misconduct by counsel, the "test is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3d Cir. 1978)). In the end, however, "'the trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial.'" *Id.* (quoting *Draper*, 580 F.2d at 94).

PGW's final salvo requires the Court to make this assessment. In support of its motion, PGW lobs a heap of accusations against opposing counsel. For instance, PGW accuses opposing counsel of flouting the Court's evidentiary rulings by asking repeated questions regarding issues that were ruled inadmissible, by introducing so-called "non-impeaching witness testimony" that was otherwise barred, by making argument and asking improper questions during direct and cross-examination(s), by speaking over (or past) the Court when it attempted to rule on the barrage of objections, and by including inappropriate claims in closing argument regarding PGW's trial objections.[14] Karlo disputes PGW's repeated suggestion that it did not receive a fair trial.

The Court cannot find it reasonably probable that the verdict was prejudicially influenced by counsel's conduct during trial. Counsel for Karlo pushed the boundaries at trial, to be sure. At times, counsel may have even crossed the line, so to speak, in attempting to zealously advocate on behalf of Karlo. And when that occurred, the Court admonished counsel accordingly. *See, e.g.*, Day 2 Tr at 107 ("THE COURT: It's cross. That doesn't mean you can just ask anything you want, with the implications that you're attempting to put before the jury."); Day 3 Tr. at 7 ("THE COURT: We're not going to try the other part of the case, Mr. Fox."); *id.* at 174 ("THE COURT: I was listening to the objection, not you going on when you heard the objection made. You're supposed to stop talking when an objection is made."). But, on balance, this conduct did not permeate the trial. Nor was it so prejudicial as to require a new trial. In any

---

14. The Court notes that PGW failed to object to some of this conduct, such as counsel's closing argument. The Court also sustained several of the objections made by PGW, instructing the jury to disregard the question. *See* Day 4 Tr. at 18-19.

event, the instructions in this case were sufficient to cure any prejudice to PGW.  Accordingly, the Court will not grant a new trial on this basis.[15]

### III. Conclusion

For the reasons hereinabove stated, the Court will deny the post-trial motions filed by PGW.  An appropriate order follows.


McVerry, S.J.

---

15.  PGW also suggests that the Court erred in allowing Karlo's counsel to present previously undisclosed expert witness rebuttal testimony to the jury.  In the Court's view, this position is without merit.  At most, Duffus attempted to rebut the criticisms levied against him by PGW's competing expert.  And where his rebuttal testimony veered beyond the scope of any previously disclosed opinion, the Court sustained the objection.  *See* Day 3 Tr. at 192-93

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **RUDOLPH A. KARLO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:10-cv-1283** |
| **v.** | ) |
| | ) |
| **PITTSBURGH GLASS WORKS, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER OF COURT

AND NOW, this 18th day of May, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANT'S COMBINED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION TO ALTER OR AMEND JUDGMENT, AND MOTION FOR NEW TRIAL filed by Pittsburgh Glass Works, LLC are **DENIED**.

**IT IS FURTHER ORDERED** that counsel shall file any petition for attorneys' fees, along with all documentation in support thereof, relating to the individual retaliation claim of Plaintiff Rudolph Karlo on or before June 15, 2016.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:     All Counsel of Record
        (via CM/ECF)